UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANET ADKINS, | : | Case No. 3:11-cv-9 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 9-18) (ALJ's decision)).

**I.**

On October 30, 2006, Janet Adkins filed an application for DIB, alleging that she became disabled on September 9, 2006 (Tr. 108-112), due to the combination of her medical conditions, including generalized anxiety disorder, major depressive disorder, post traumatic stress disorder, seizure disorder, and migraines. (Tr. 12).

Plaintiff's claims were denied initially (Tr. 53, 55-57) and upon reconsideration (Tr. 54, 59-61). Thereafter, the claimant requested a hearing where she appeared with an attorney and testified on October 2, 2009. (Tr. 9). On January 22, 2010, the ALJ issued a decision denying benefits. Subsequently, the Appeals Council denied review of the

ALJ's decision. (Tr. 1-3). Plaintiff then commenced this action in federal court for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff was 43 years old at the time of the hearing and lived with her husband.[1] The ALJ found that Plaintiff was able to perform her prior relevant work as a hand packer.

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since September 9, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels but with the following non-exertional limitations: 1) simple, unskilled, low stress work; 2) no assembly line production quotas; 3) no fast pace; and 4) minimal contact with the general public, coworkers, and supervisors.

---

[1] The Court was unable to find in the record any information regarding Plaintiff's education.

[2] The Agency's regulations define residual functional capacity ("RFC") as "the most you can still do despite your impairments." 20 C.F.R. § 404.1545(a)(1).

6.  The claimant is capable of performing past relevant work as a hand packager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2006 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 12-18).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to disability insurance benefits. (Tr. 18).

On appeal, Plaintiff argues that: (1) the ALJ erred in interpreting Plaintiff's testimony and made findings and conclusions that were not supported by the evidence; (2) the ALJ erred in disregarding the opinions of several healthcare professionals, including Dr. Kitchener, Ms. Garber, Dr. Spagnola, Dr. Atiq, Deborah Zunk, and Dr. Boerger; (3) the ALJ improperly found that Plaintiff's depression did not meet the listed impairment; and (4) the ALJ improperly evaluated the medical evidence by finding that Plaintiff had the RFC to perform a full range of work at all exertional levels. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

The record reflects that:[3]

---

[3] Plaintiff challenges the ALJ's findings related only to her depression and migraines, and accordingly, the Court "limit[s] [its] consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal." *Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir. 2006).

-4-

In August 2006, Plaintiff reported to the emergency room complaining of a migraine headache. (Tr. 333). Plaintiff was given medication and her pain became "substantially reduced," and she felt "much better." (Tr. 334). Plaintiff was discharged in stable condition and instructed to follow up with her primary care physician. (Tr. 334).

Dr. Boerger examined Plaintiff at the request of the state agency in January 2007. (Tr. 338-43). Plaintiff reported that she had not undergone any mental health treatment at that time, except with her primary care physician. (Tr. 339). Plaintiff appeared depressed, anxious, and at times tearful. (Tr. 340). Plaintiff stated that she felt hopeless, had mood swings, and experienced visual hallucinations. (Tr. 341). She reported that she did laundry, cooked, went to the grocery store, and helped take care of her dogs. (Tr. 342). Dr. Boerger diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. (Tr. 348). He assigned a GAF score of 49, and a functioning GAF score of 51.[4] (Tr. 342).

In September 2007, Plaintiff began undergoing mental health treatment at Miami County Mental Health Care with therapist Deborah Zunke and psychiatrist Dr. Atiq. Plaintiff indicated that she was "trying to get disabl[ility]." (Tr. 450). Plaintiff was

---

[4] A GAF (Global Assessment of Functioning) is a score assigned to a person when considering all psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. A score of 41-50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. Text. Rev 2000). A score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

initially diagnosed with major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. (Tr. 461). She was assigned a GAF of 50. (Tr. 461).

Plaintiff was hospitalized for five days in October 2007 for suicidal ideation, depression, and self-injurious behavior. (Tr. 366). Plaintiff complained that she had been depressed for two to three years, her symptoms continued to worsen, and she cut her wrist with a knife on the night of her hospitalization. (Tr. 366). Plaintiff's medications were adjusted and she began to attend therapy. (Tr. 366). She responded to this course of treatment and started showing improvement. (Tr. 366-67). Plaintiff's condition stabilized, her mood become "better," she was more social, and her sleep and appetite improved. (Tr. 367). Plaintiff was diagnosed with major depressive disorder and assigned a GAF score of 60-70 at the time of discharge.[5] (Tr. 367).

Shortly after she was discharged form the hospital in November 2007, Plaintiff reported to Dr. Atiq that she was more social, less withdrawn, and "feeling better." (Tr. 438). Plaintiff continued treatment at Miami County Mental Health Care where her doctors noted that Plaintiff had a "normal" mood and affect. (*Id.*)

In March 2008, Plaintiff was hospitalized with suicidal thoughts and ideation. (Tr. 379). She reported that her depression was slowly worsening which caused her to have suicidal impulses and urges. (Tr. 379). Medication and therapy caused to her stabilize

---

[5] A score of 61-70 indicates that a person has only mild symptoms or some difficulty with social, occupation, or school functioning, but such a person can generally function pretty well and have some meaningful interpersonal relationships. DSM-IV at 34 (2000).

-6-

and she was discharged with a GAF score of 60-70. (Tr. 382).

In April 2008, Plaintiff informed Dr. Atiq that she was "doing well" with an improved mood and had become more involved in taking care of her granddaughter. (Tr. 420. In June 2008, Dr. Atiq noted that Plaintiff continued to improve, that she was now gardening and helping care for her family. (Tr. 418, 636, 639).

Plaintiff reported to the emergency room in January 2009, complaining of numbness on the right side of her body and slurred speech. (Tr. 471). Plaintiff was given Aspirin and improved quickly. (Tr. 464). Medical personnel were unsure what caused the episode and a CT scan and MRI did not show any abnormalities. (Tr. 481, 496-97).

Plaintiff again went to the emergency room in February 2009 for complaints of numbness on the right side of her body and slurred speech. (Tr. 539). Plaintiff had a mild headache, but her symptoms disappeared 15 minutes after arriving at the emergency room. Medical personnel thought she might have had a stroke-like episode, but all objective testing was unremarkable. (Tr. 541). In June 2009, a neurologist stated that he believed Plaintiff's right-sided numbness was a "complex migraine phenomenon." (Tr. 658).

At the hearing, Plaintiff testified that she stopped working because she was experiencing migraine headaches and depression. (Tr. 32). Plaintiff alleged that she had headaches four to five times per week, had severe depression, and had tried to commit suicide twice. (Tr. 34-35). Additionally, Plaintiff stated that she had panic attacks,

anxiety attacks, and feelings of helplessness and hopelessness. (Tr. 37).

Plaintiff maintained that she did some cooking, washed dishes, did laundry, and dusted, but that she stayed in her bedroom "99 perfect of the time because of the depression." (Tr. 37-38). Plaintiff left her house once or twice a week to go grocery shopping or pick up medication. (Tr. 38). She saw her son and granddaughter at least once a week. (Tr. 39).

The ALJ determined that depression was Plaintiff's only severe impairment – an impairment causing significant limitations to basic work activities. (Tr. 12). *See* 20 C.F.R. §404.1520(c). The ALJ noted that Plaintiff experienced migraine headaches but that these impairments were well-managed by medication, did not cause significant basic work-related limitations, and were not caused by any significant underlying pathology. (Tr. 13). The ALJ found that Plaintiff was capable of performing a full range of work at all exertional levels, but had the following non-exertional limitations: (1) she could perform only simple, unskilled, low stress work; (2) no jobs with assembly line production quotas; (3) no fast paced work; and (4) minimal contact with the general public, coworkers, and supervisors. (Tr. 16).

Regarding her daily activities, the ALJ noted that Plaintiff was more active and outgoing that she admitted – noting that Plaintiff did routine chores, shopped, drove until 2008, babysat, and helped her daughter and the family of her ill nephew. (Tr. 15, 17, 30, 37-38, 407, 417, 420, 636). The ALJ found these activities were inconsistent with

Plaintiff's allegations that she did not like to be around people, had to be checked on by friends, had panic attacks, and had four or five migraines a week. (Tr. 34, 37, 43). The ALJ could reasonably conclude that the extent of Plaintiff's daily activities was consistent with her ability to perform certain types of work and inconsistent with her testimony which alleged disabling limitations. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("The ALJ could properly determine that her subjective complaints were not credible in light of her ability to perform other tasks."). Based in part on these daily activities, the ALJ found Plaintiff's allegations were not entirely credible, and this finding is entitled to great deference. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight.").

**B.**

Plaintiff also claims that the ALJ mischaracterized her depression as "stable." However, the ALJ found that Plaintiff's depression did cause work related limitations and included a number of restrictions in her RFC finding to account for the depression. (Tr. 16). While the ALJ acknowledged that Plaintiff had been hospitalized three times for suicide attempts or ideation, the ALJ observed that the treatment notes showed that Plaintiff improved quickly with treatment and she most often had a normal mood and affect and her activity level increased. (Tr. 12, 15, 17, 404, 407, 414-18, 420, 427, 430, 435-38, 636, 641, 689). The ALJ also noted that Plaintiff's hospital visits were infrequent, short in duration (lasting three to five days), and that she stabilized quickly

with proper treatment. (Tr. 15, 266-67, 382-83).

## C.

Plaintiff also argues that the ALJ erred in finding that her migraine headaches were "managed well on medication." However, the ALJ referenced evidence in the record that suggested that Plaintiff's migraines were well-managed by medication and subsided quickly with medication. (Tr. 13, 334, 377, 464).

## D.

Next, Plaintiff alleges that the ALJ erred in giving reduced or little weight to medical opinions in the record which relate to her level of activity.

First, Dr. Spagnola, a family physician, opined that "Plaintiff was disabled from working indefinitely, likely permanently" in a November 2006 note. (Tr. 389). The ALJ gave this opinion little weight because Dr. Spagnola was a family physician and not a mental health expert. *See* 20 C.F.R. §404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a course who is not a specialist."). Moreover, Dr. Spagnola's findings were neither supported by objective evidence nor consistent with the significant evidence in the record. (Tr. 15). *See* 20 C.F.R.§ 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). For example, Dr. Spagnola maintained that Plaintiff's migraines were controlled by her medication. (Tr. 14-15, 334, 377, 464).

-10-

In June 2009, Dr. Kitchener opined in a questionnaire that Plaintiff had significant physical limitations and "cannot hold a job" as a result of a "probable" seizure disorder and complex migraine syndrome. (Tr. 681). However, Dr. Kitchener's opinion was inconsistent. (Tr. 14). At one point, Dr. Kitchener indicated that Plaintiff could sit for over six hours in a normal workday and stand/walk for over six hours in a normal workday, although he also noted that Plaintiff would need to rest for two hours during the workday. (Tr. 13, 674-676). Dr. Kitchener later opined that Plaintiff could sit for just two hours in a normal workday, stand/walk for just two hours in a normal workday, and would be able to work only two total hours during the workday. (Tr. 13, 676). Moreover, Dr. Kitchener's opinions lacked objective medical evidence. For example, Plaintiff's MRI was interpreted as normal and showed nothing consistent with a seizure disorder or other neurological abnormalities.

Dr. Boerger, a psychologist, examined Plaintiff in 2007 at the request of the state agency. (Tr. 338-43). Dr. Boerger opined that Plaintiff was able to perform simple, repetitive tasks, without difficulty, but had moderate-to-marked limitations in her ability to deal with stress and relate to her co-workers and supervisors. (Tr. 343). The RFC findings, which limited Plaintiff to low stress work and minimal personal contacts, was consistent with Dr. Boerger's findings. (Tr. 16-17).

Dr. Atiq, Plaintiff's treating psychiatrist, and Deborah Zunke, a therapist, provided several opinions at the request of Plaintiff's attorney. These individuals opined that Plaintiff had severe restrictions in her ability to complete a normal workday or work

-11-

week, maintain attention for extended periods of time, accept criticism, and work in coordination with others. (Tr. 17). The ALJ declined to give these opinions either controlling or deferential weight because these opinions, which were comprised only of checking boxes, were not supported by clinical findings and were inconsistent with Plaintiff's treatment notes. (Tr. 17). The ALJ accounted somewhat for Plaintiff's depression and tendency for social avoidance in her RFC finding. (Tr. 15, 17). However, most of Plaintiff's mental status exams were normal or showed only mild abnormalities, and Plaintiff seemed to improve with treatment, as her activity level increased. (Tr. 17, 404, 407, 414-18, 420, 427, 430, 435-38, 636, 641, 689).

### E.

Finally, Plaintiff claims that her depression met the requirements of Listing 12.04, which would require the ALJ to find that she was disabled. In order to establish that she met Listing 12.04, Plaintiff bears the burden of proving that she has a mental impairment that results in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration (meaning three episodes per year, each lasting at least two weeks). 20 C.F.R. pt. 404, subpt. P, app. 1, §12.04.

Contrary to Plaintiff's arguments, the ALJ reasonably noted that the record did not suggest that Plaintiff had marked restrictions in her activities of daily living or social functioning. (Tr. 15). Instead, the record shows that Plaintiff's depression improved with

treatment and her activity level increased. She did household chores, shopped, babysat, and helped with her daughter. (Tr. 15, 30, 37-38, 407, 417, 420). Additionally, Plaintiff has not gone to the hospital more than three times in three years, and her condition improved after short visits of three to five days. (Tr. 15, 366-67, 382-83). Therefore, the ALJ reasonably determined that Plaintiff had only a mild impairment in her activities of daily living and only a moderate impairment in social functioning. (Tr. 15). Accordingly, Plaintiff's depression did not satisfy the requirements of Listing 12.04.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Janet Adkins was not entitled to disability insurance benefits, is found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date: 11/15/11

Timothy S. Black
United States District Judge